IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANDREA COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:24-cv-231-JTA |
| | ) (WO) |
| CVS PHARMACY, INC., | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Before the Court is the Motion to Compel Arbitration and Stay Proceedings filed by Defendant CVS Pharmacy, Inc. ("CVS"). (Doc. No. 10.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 14,15.) For the reasons stated below, the motion is due to be granted.

## I.    JURISDICTION

This Court exercises subject matter jurisdiction over this action based on federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff Andrea Coleman's causes of action arise under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301–4313. The parties do not contest personal jurisdiction over this action or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

## II.     FACTS[1] AND PROCEDURAL HISTORY

In July 2022, CVS hired Coleman to work as a shift supervisor. (Doc. No. 1 at 3 ¶

10.) On August 26, 2022, Coleman signed an arbitration agreement with CVS, which

provided, in relevant part:

### CVS HEALTH ARBITRATION AGREEMENT

1.     **Mutual Agreement to Arbitrate Claims**. . . . Under this Agreement, You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.

2.     **Claims Covered by this Agreement**. Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in paragraph 6, below, regarding the Class Action Waiver.

3.     **Claims Not Covered by this Agreement**. . . . [E]xcluded from this Agreement are disputes that may not be subject to a pre-dispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act or any other binding federal law or legal authority.

---

[1] These facts are taken from the allegations of the complaint and the parties' briefs. The facts herein are undisputed for purposes of analyzing the motion to compel arbitration.

4.      **Arbitration Proceedings**.

. . . .

c.      Rules and Procedures. The arbitration will be administered by the American Arbitration Association ("AAA") and will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA ("AAA Rules") then in effect. . . .

d.      Costs and Fees. CVS will pay all costs and expenses charged by the AAA or the arbitrator, including but not limited to the arbitrator's fees, except that, for claims You initiate, You will be responsible to pay the claim initiation fee charged under the AAA Rules; however, if Your claim initiation fee exceeds what a court in the jurisdiction would have charged You for filing a lawsuit based on Your claims, then You will be responsible only for the amount that the court would have charged, and CVS will pay the remaining amount to the AAA. Each party will pay its own litigation costs and attorneys' fees, if any. However, if any party prevails on a claim which affords the prevailing party attorneys' fees and litigation costs, the arbitrator is authorized to award attorneys' fees and/or litigation costs under the same standards a court would apply under applicable law.

. . . .

7.      **Your Right to Opt Out of Arbitration**. [2] Arbitration is not a mandatory condition of Your employment at CVS. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, Your opt out notice must be postmarked no later than **30 days** after the date you agree to the Agreement below.

. . . .

9.      **Statement of Assent and Understanding**. By signing below, You acknowledge that You have carefully read this Agreement, that you understand and agree to its terms, that You have had the chance to ask questions about the Agreement, and that you have had or will have the chance to consult with your own legal counsel before the end of the opt out period

---

[2] Coleman did not opt out of the arbitration agreement.

described above. You enter into the Agreement voluntarily and not in reliance on any promises or representations made by CVS other than those in the Agreement itself. **You understand that by agreeing to this Agreement and not opting out, You and CVS are giving up the right to go to court to resolve Covered Claims and giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others on Covered Claims**.

(Doc. No. 10-2 at 6-7 (emphasis in original).)

When CVS hired Coleman, it knew she was a member of the United States Army National Guard. (Doc. No. 1 at 3 ¶¶ 11–12.) Around January 2023, Coleman learned the National Guard would deploy her to Poland from March 2023 through January 2024, and she promptly informed CVS. (*Id*. at ¶ 13.) The National Guard provided Coleman her deployment orders and the exact dates of her deployment on March 8, 2023. (*Id*. at 3 ¶ 14.) Coleman promptly informed CVS of the specific dates of her upcoming military-service-related absence. (*Id*. at 4 ¶ 19.) Coleman left for predeployment training on March 16, 2023, deployed to Poland on April 7, 2023, and returned from military service on January 12, 2024. (*Id*. at ¶ 20.)

In February 2024, Coleman informed an employee in CVS's human resources department her military deployment was complete, and she was ready to return to work. (*Id*. at ¶ 21.) The human resources employee told Coleman her employment had been terminated because she had not been scheduled for a shift within a 90-day period. (*Id*. at 4–5 ¶¶ 22-23.) CVS refused to allow Coleman to return to work. (*Id.*)

On April 18, 2024, Coleman filed a complaint against CVS in this Court asserting

USERRA claims for discrimination by termination[3] and failure to reemploy her.[4]

---

[3] Coleman's USERRA employment discrimination claim is entitled "38 U.S.C. § 4311(a) – Intentional Discrimination by Terminating Plaintiff" and alleges "Defendant denied Plaintiff retention in employment by terminating her." (Doc. No. 1 at 5 ¶¶ V.A. & 26.) USERRA provides as follows:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

[4] USERRA contains the following relevant provisions regarding reemployment:

> Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if--

>> (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

>> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

>> (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

38 U.S.C. § 4312(a).

> USERRA further provides as follows:

> (a) Subject to subsection (b) (in the case of any employee) and sections 4314 and 4315 (in the case of an employee of the Federal Government), a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in accordance with the following order of priority:

> . . . .

>> (2) Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for more than 90 days--

### III.    STANDARD OF REVIEW[5]

When an action brought in federal court involves an issue subject to an arbitration agreement enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–402, the court, upon motion of one of the parties, "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such

---

> (A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform; or
>
> (B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

38 U.S.C. § 4313(a).

[5] When a court considers a dispute regarding the existence of an arbitration contract, or when a court determines whether a trial or evidentiary hearing is necessary regarding a motion to compel arbitration, the court may apply a "summary-judgment-like standard" of review. *Reiterman v. Abid*, 26 F.4th 1226, 1233 (11th Cir. 2022); *see Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)); *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014). In this case, the facts are undisputed. A summary-judgment-like standard, with its burden-shifting process, is unnecessary for determining whether a trial or evidentiary hearing is needed pursuant to § 9 of the FAA, 9 U.S.C. § 9. Oral argument is also unnecessary; the motion to compel arbitration can be decided on the briefs.

grounds as exist at law or in equity for the revocation of any contract or as
otherwise provided in chapter 4.[6]

9 U.S.C. § 2.

"This statutory language underscores a "'strong federal policy favoring the
enforceability of arbitration contracts.'" *Eidson v. Albertville Auto Acquisitions, Inc.*, No.
4:19-CV-00459-KOB, 2019 WL 6311495, at *1 (N.D. Ala. Nov. 25, 2019) (quoting
*Koullas v. Ramsey*, 683 So. 2d 415, 416–17 (Ala. 1996) (citing *Allied-Bruce Terminix Cos.
v. Dobson*, 513 U.S. 265, 271 (1995))). "[A]s a matter of federal law, any doubts
concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether
the problem at hand is the construction of the contract language itself or . . . [a] defense to
arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25
(1983). "A court should not deny arbitration unless it can determine 'with positive
assurance that the arbitration clause is not susceptible of an interpretation that covers the
asserted dispute.'" *Eidson*, 2019 WL 6311495, at *1 (quoting *AT&T Tech., Inc. v.
Communications Workers of Am., Inc.*, 475 U.S. 643, 650 (1986)).

### III.     USERRA

USERRA was enacted for the following purposes:

(1)     to encourage service in the uniformed services by eliminating or
minimizing the disadvantages to civilian careers and employment
which can result from such service;

(2)     to minimize the disruption to the lives of persons performing service
in the uniformed services as well as to their employers, their fellow
employees, and their communities, by providing for the prompt

---

[6] Chapter 4 of the FAA is inapplicable. It pertains to unenforceability of arbitration agreements in
disputes involving sexual assault and sexual harassment. 9 U.S.C. §§ 401-02.

> reemployment of such persons upon their completion of such service; and
>
> (3)    to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a).

In addition to the substantive rights to be free from discrimination based on military service and to reemployment upon return from military service, 38 U.S.C. §§ 4311–13, and the rights to monetary and equitable relief provided under the statute, 38 U.S.C. §§ 4323(d)(1), (d)(2)(a), (e), USERRA provides certain procedural rights and benefits. Those include the following: the right to commence an action in federal court against a private employer to vindicate substantive rights under USERRA in "any district in which the private employer of the person maintains a place of business;" the right to file such an action without being charged court costs or fees;[7] and, as a prevailing party in such an action, the right to recover not only reasonable attorney fees, but also "expert witness fees [] and other litigation expenses." 38 U.S.C. §§ 4323(b)(3), (c)(2), (h)(1)-(2).

USERRA does not "nullify or diminish any Federal or State law . . . , contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter." 38 U.S.C. § 4302(a). However, unlike several other statutes related to employment, USERRA supersedes laws and contractual agreements that limit not only the

---

[7] Coleman paid the filing and administrative fees for this action, which the Clerk of Court accepted. The Court will remedy the overpayment by separate order.

substantive rights it provides, but all rights and benefits under its provisions and any

prerequisites to the exercise of those rights and benefits. It states:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).

## IV.    DISCUSSION

A.    Parties' Arguments

The parties disagree whether Coleman's USERRA claims are subject to arbitration

under the FAA. First, CVS contends, under the plain terms of the delegation clause[8] in the

arbitration agreement, the arbitrability of Coleman's USERRA claims is for the arbitrator

to decide, not the Court.    Second, CVS contends the primary arbitration agreement[9]

requires arbitration of her USERRA claims. [10] For this second argument, CVS relies on the

language of the primary arbitration agreement, the FAA's policy favoring arbitration

---

[8] A delegation clause is an agreement to delegate the issue of arbitrability itself to an arbitrator. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). It operates as a separate "agreement to arbitrate the arbitrability of the parties' claims, nested within another agreement to arbitrate the merits of those claims." *Id.* at 1303. The CVS delegation clause states the parties' agreement to arbitrate "disputes arising out of or relating to the validity, enforceability or breach of this Agreement." (Doc. No. 10-2 at 6 ¶¶ 1, 2.)

[9] A primary arbitration agreement is an "agreement[] to arbitrate the merits of claims arising from a contract." *Attix*, 35 F.4th at 1302.

[10] CVS also argues the primary arbitration agreement's incorporation of the American Arbitration Association's ("AAA's") rules requires submission of the arbitrability question to the arbitrator. (Doc. No. 10 at 9-10.) As explained more fully in this Memorandum Opinion, the plain terms of the delegation clause require submission of the issue of arbitrability to the arbitrator. Therefore, the Court will not address CVS's argument pertaining to incorporation of the AAA's rules.

9

agreements, and cases addressing the enforceability of arbitration agreements to resolve

USERRA claims.[11]

Coleman responds the FAA does not require enforcement of either the primary

arbitration agreement or the delegation clause. As to the delegation clause, she argues:

"Where Plaintiff has not waived her right to a judicial forum, requiring her first to submit

to an arbitrator the question of whether her USERRA claims are arbitrable would constitute

a forbidden 'additional prerequisite to the exercise of … such right,' contrary to the plain

text of the statute." (Doc. No. 13 at 11-12 (quoting 38 U.S.C. § 4302(b)).)

Coleman's contention she never waived her right to resolve her USERRA claims in

a judicial forum hinges on her interpretation of the interplay between USERRA and the

---

[11] *See*, *e.g.*, *Ziober v. BLB Res., Inc.*, 839 F.3d 814 (9th Cir. 2017) ("Consistent with the other circuits to have considered the question, we . . . conclude that the plain text of USERRA does not preclude the compelled arbitration of disputes arising under its provisions."); *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 563 (6th Cir. 2008) ("USERRA claims are arbitrable."); *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 681 (5th Cir. 2006) ("[W]e hold that USERRA claims are subject to arbitration under the FAA."); *Giddings v. Media Lodge, Inc.*, 320 F. Supp. 3d 1064, 1079 (D.S.D. 2018) ("Every federal circuit court to consider the issue has held that neither § 4302 nor the legislative history of USERRA shows that Congress intended to prohibit compelled arbitration of USERRA claims."); *Mitchell v. Weather Channel*, *LLC*, 2012 WL 13013002 at *5 (N.D. Ga. March 9, 2012) ("To require judicial resolution of USERRA claims absent express waiver, as Plaintiff seeks, would contravene 'the presumption that arbitration provides a fair and adequate mechanism for enforcing statutory rights.'" (quoting *Dale v. Comcast Corp.,* 498 F.3d 1216, 1223 (11th Cir. 2007))); *Will v. Parsons Evergreene, LLC*, No. 08-cv-00898-DME-CBS, 2008 WL 5330681, at * 5 (D. Colo. Dec. 19, 2008) ("[The plaintiff] has failed to meet his burden of proving Congress's intent to preclude waiver of a jurisdictional forum for USERRA claims."); *Kitts v. Menards, Inc*., 519 F. Supp. 2d 837, 844 (N.D. Ind. 2007) ("Plaintiff has not satisfied his burden to prove that Congress intended to preclude arbitration of USERRA claims."); *see also Bodine v. Cook's Pest Control Inc*., 830 F.3d 1320, 1326 (11th Cir. 2016) ("We conclude that USERRA can be read in harmony with the FAA."). *But see, e.g.*, *Breletic v. CACI, Inc*., 413 F. Supp. 2d 1329 (N.D. Ga. 2006) ("[T]he legislative history of the USERRA quoted above indicates that a person can waive his or her rights under the USERRA, but any such waiver must be clear, convincing, specific, unequivocal, and not under duress." (internal quotation and citation omitted)).

primary arbitration agreement. Coleman contends USERRA embodies a limited preclusion on arbitration agreements that require any waiver of the right to pursue USERRA claims in a judicial forum to clearly and specifically reference USERRA by name. (Doc. No. 13 at 6-12).

In so arguing, Coleman relies almost entirely on *Dubose v. CVS Pharmacy*, Case No. 2:15-cv-1771-MHH, September 22, 2016 Memorandum Opinion and Order (Doc. No. 21) (N.D. Ala. 2016), *appeal dismissed for lack of prosecution*, Case No. 16-17169-AA (11th Cir. February 8, 2017). *Dubose* concerned the same arbitration agreement at issue here. In *Dubose*, the court held USERRA places a limited restriction on arbitration agreements by requiring an arbitration agreement to "specifically list USERRA if an employer wishes a reservist to waive a judicial forum." *Dubose*, at 27 n.7. The court in *Dubose* did not find the FAA inapplicable to USERRA claims. Instead, the court held:

> [N]either the text of USERRA nor the statute's legislative history indicates that Congress intended to completely preclude a contractual waiver of a judicial forum for USERRA claims, but the text of the statute, the legislative history of the statute, and the conflict between the underlying purposes of the statute and arbitration demonstrate that Congress did intend that a waiver of a judicial forum for a USERRA claim must be "clear, convincing, [and] specific." H.R. Rep. 103-65 (1994), 1993 WL 235763 at *20.

*Dubose*, at 12. CVS's primary arbitration agreement does not specifically mention USERRA. Therefore, using the court's reasoning in *Dubose*, Coleman contends the primary arbitration agreement is insufficiently specific to waive her right to a judicial forum for resolution of her USERAA claims.[12]

---

[12] The court in *Dubose* did not address the enforceability of the delegation clause. Rather, the court addressed only whether the primary arbitration agreement is enforceable as to the merits of

B.    Enforceability of the Delegation Clause

As with any other arbitration agreement, a delegation clause must be enforced when the FAA so requires. *Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1341–42. (11th Cir. 2024); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022). The validity and enforceability of a delegation clause is analyzed separately from the validity or enforceability of the primary arbitration agreement. *Attix*, 35 F.4th at 1303. The Court cannot reach the arbitrability of the underlying claims unless it first finds the delegation clause unenforceable.[13] Therefore, the Court must begin its analysis by assessing the delegation clause.

USERRA claims. That is likely because a delegation clause is a waivable defense; its proponent "must raise [it] in order to rely upon it." *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016) (citing *Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1291–92 (11th Cir. 2014)). In *Dubose*, CVS did not argue arbitrability was for the arbitrator, rather than the court. *See Dubose v. CVS Pharmacy*, Case No. 2:15-cv-1771-MHH (N.D. Ala.), CVS's December 4, 2015 Memorandum of Law in Support of the Motion of Defendant to Dismiss Plaintiff's Complaint and to Compel Arbitration of Plaintiff's Claims (Doc. No. 8). Instead, in *Dubose*, CVS solely argued, because the "[p]laintiff's claims ar[o]se under USERRA and [were] directly related to his employment," the *court* should have found "the claims f[e]ll squarely within the terms of the Arbitration Policy and [were] subject to arbitration." *Id*. at 11-12; *see also id.* at 12 ("Here, Plaintiff asserts claims under USERRA and alleges CVS violated the law in terminating his employment and in failing to reemploy him after his military service. Clearly, each of these claims arises out of Plaintiff's employment. Thus, as Plaintiff and Defendant agreed to submit all such claims to arbitration, the entirety of Plaintiff's Complaint is subject to dismissal."). In the instant case, because CVS has raised the delegation clause as a defense, the Court must address the issue. Simply put, this case is distinguishable from *Dubose*.

[13] "By default, a court would normally decide threshold disputes about whether a party's claims are arbitrable." *Attix*, 35 F.4th at 1295 (citing *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014)). Even so, "'[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.'" *Id*. at 1296 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). Hence, only "if a party successfully challenges the validity or enforceability of [the] delegation agreement, the court should proceed to resolve any challenges to the validity or enforceability of the parties' primary arbitration agreement, per the default rule assigning threshold arbitrability issues to the court's review." *Id*. at 1302. Otherwise, "the court must enforce the delegation agreement and send" to the arbitrator "any challenges to the

The Eleventh Circuit has set forth certain principles regarding the applicable legal presumptions and burdens of proof and persuasion applicable to an arbitration dispute concerning a delegation clause. In a nutshell, if the FAA applies to the agreement and is not wholly overridden by another act of Congress, the Court must treat the agreement as valid and enforce it, unless the party opposing arbitration specifically and successfully challenges it. *Steines*, 113 F.4th at 1342; *see also Attix*, 35 F.4th at 1302 ("[T]o overcome a delegation agreement, a party must challenge the validity or enforceability of the parties' precise agreement to arbitrate threshold arbitrability issues."). "A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *Attix*, 35 F.4th at 1304.

1.    The FAA is Applicable.

Before the Court can determine whether the FAA requires enforcement of the delegation agreement, the Court must first determine whether the FAA's statutory scheme as a whole is applicable to the arbitration agreement. *Steines*, 113 F.4th at 1342 ("Where the challenger attacks the applicability of the FAA's statutory scheme as a whole, the challenge necessarily raises an 'antecedent statutory inquiry' that the court must resolve." (quoting *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019)). This is because the FAA provides the judicial authority to delegate matters to an arbitrator in the first place. *Id.* If the FAA does not apply at all, it cannot be used to compel arbitration, even the arbitration

---

validity or enforceability of the primary arbitration agreement" to arbitrate claims on the merits. *Id.* at 1304.

of arbitrability. *Id*. (noting the FAA's general rules for enforcing arbitration agreements apply "only if the FAA does").

"Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Hence, a party may "challenge the applicability of the FAA itself" by arguing another statute "displaces the FAA altogether." *Steines*, 113 F.4th at 1342, 1345. Coleman's arguments, on their surface, appear to suggest such displacement by USERRA.

In determining whether a competing statute renders the FAA wholly inapplicable to an arbitration agreement, the Court must give effect to both statutes whenever possible.[14] *Id*. at 1343. Thus, when the party opposing arbitration attacks the applicability of the FAA's statutory scheme "as a whole," that party bears a "heavy burden" of demonstrating the competing statute "displaces the FAA altogether" such that the two statutes cannot be harmonized. *Id*. at 1342–43, 1345; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995)).

---

[14] The Court also applies "a strong presumption that if Congress intended to override preexisting law, Congress would have specifically addressed the matter." *Steines*, 113 F.4th at 1343 (citing *Epic Sys. Corp*., 584 U.S. at 510). Congressional intent "to limit or [wholly] prohibit waiver of a judicial forum for a particular claim . . . 'will be deducible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985)).

Here, however, Coleman does not argue USERRA displaces the FAA or overrides the FAA to the point of making it totally inapplicable. Rather, in this case, the applicability of the FAA, including 9 U.S.C. § 2, is undisputed. By relying on *Dubose*, Coleman implicitly acknowledges the FAA and USERRA *can* be read in harmony with respect to the CVS agreement. (Doc. No. 13 at 7 ""*[A]lthough the plain text of USERRA does not preclude arbitration altogether*, the text of the statute exhibits a strong congressional preference for a judicial forum for USERRA claims and a congressional hostility to alternative forums for the resolution of USERRA disputes'" (quoting *Dubose* at 17–18) (emphasis added).)  In addition, such an argument would be futile because the Eleventh Circuit has expressly held USERRA and the FAA *can* be harmonized.[15] *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1326 (11th Cir. 2016) ("We conclude that USERRA can be read in harmony with the FAA.").

Instead, Coleman argues, based on USERRA's alleged[16] limited preclusion of arbitration, the language of the primary arbitration agreement is insufficient to waive her right to judicial resolution of her USERRA claims. By extension, she contends USERRA renders the delegation agreement an unenforceable prerequisite to submitting her USERRA

---

[15] The *Dubose* court recognized that, in *Bodine*, the Eleventh Circuit Court of Appeals . . . held . . . . 'US[]ERRA can be read in harmony with the FAA.'" *Dubose*, at 16 (quoting *Bodine*, 830 F.3d at 1326). The *Dubose* court held, by requiring a clear, express waiver of USERRA rights, USERRA *limits but does not displace* the FAA. *Dubose*, at 16–17, 22.

[16] Because the Court makes no finding regarding the arbitrability of Coleman's underlying claims, this Memorandum Opinion does not address the validity of the court's holding in *Dubose* that USERRA places a limited restriction on arbitration agreements. Likewise, the Court makes no finding as to the validity of the court's holding in *Dubose* that the language of the CVS agreement was insufficiently specific and unambiguous to waive the right to a judicial forum for USERRA claims.

claims to a judicial forum. Those arguments concern whether § 2 of the FAA mandates arbitration, not whether the FAA applies to the arbitration agreement at all in the first place. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (noting § 2 of the FAA requires arbitration when the dispute falls within the scope of the parties' contract and the agreement is "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract'" (quoting 9 U.S.C. § 2). Therefore, the Court will address Coleman's arguments later in this Memorandum Opinion. [17] Nonetheless, at this step, the Court concludes Coleman does not challenge the applicability of the FAA's statutory scheme as a whole, and § 2 of the FAA applies.

2.    Enforceability of the Delegation Clause Under § 2 of the FAA

A delegation clause is enforceable under the FAA "as a standalone contract," separate from the agreement to arbitrate the merits of a plaintiff's claims. *Steines*, 113 F.4th at 1342. Because the FAA is applicable, § 2 of the FAA governs the enforceability of the delegation clause in the CVS agreement. *Id.* "This is because § 2 of the FAA mandates that arbitration provisions – including delegation clauses – are severable from any larger

---

[17] The Eleventh Circuit recently distinguished between two types of delegation clause disputes involving the interplay between the FAA and an allegedly competing statute. That distinction, in turn, determines the point in the analysis at which such a dispute must be addressed. In the first type of dispute, the party opposing the delegation clause argues the FAA is completely displaced and wholly inapplicable to the arbitration agreement. That type of dispute is not delegable to an arbitrator. *See Steines*, 113 F.4th at 1342–43. In the second type of dispute, the party opposing the delegation clause argues that, by applicability of § 2 of the FAA, a delegation agreement is unenforceable "upon such grounds as exist at law," 9 U.S.C. § 2, because, for example, the delegation clause allegedly violates a separate statute's guarantee of a right to proceed on the merits in a judicial forum. *See generally Attix*, 35 F.4th 1284. Disputes like the second type presume the application of the FAA and are addressed only if the court first finds the FAA applicable. *Cf. Steines*, 113 F.4th at 1335 (distinguishing *Attix*, 35 F.4th 1335). This case involves the second type of dispute.

contract of which they are a part." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). Here, because "§ 2 of the FAA applies," the Court "must enforce the delegation clause as a separate contract unless the delegation clause itself is specifically invalidated, even if the underlying contract or arbitration agreement is clearly invalid." *Id.* Section 2 of the FAA requires enforcement of the delegation clause if the Court finds (1) "the agreement was formed," (2)" it applies to the dispute at hand, and" (3) "no grounds render it invalid or unenforceable" under § 2 of the FAA. *Attix*, 35 F.4th at 1295 (citing *Rent-A-Center*, 561 U.S. 63, 69 (2010) (citing in turn 9 U.S.C. §§ 2–4)).

> i.    The Parties Formed a Valid Delegation Clause that Applies to Their Arbitrability Dispute.

Neither party questions whether Coleman and CVS formed a delegation agreement. Likewise, there is no dispute the delegation clause applies to the controversy over arbitrability.

Further, Coleman does not argue the delegation clause fails to clearly express either party's intent to arbitrate the question of arbitrability, even of USERRA claims. Neither does she argue the delegation clause at issue is unenforceable because *it* does not specifically mention USERRA. *See Attix*, 35 F.4th at 1304 ("A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues."). By its terms, the delegation agreement clearly, specifically, and unambiguously communicates the parties' intent to

submit to arbitration all "disputes arising out of or relating to the validity [or] enforceability of the arbitration agreement." (Doc. No. 10-2 at 6 ¶ 2.)

Accordingly, the Court finds the parties entered into a delegation agreement, and that agreement delegates to the arbitrator all issues of enforceability of the arbitration agreement. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018) (holding that questions of arbitrability are decided by the arbitrator where, as here, "'clear and unmistakable evidence' demonstrates that the parties intended to submit such questions to an arbitrator" (quoting *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342–43 (11th Cir. 1998)).

ii.    The Delegation Clause Is Valid and Enforceable.

The Court next considers whether any "grounds render [the delegation agreement] invalid or unenforceable" under § 2 of the FAA. *Attix*, 35 F.4th at 1294–95 & n.8. "It is up to" the party opposing arbitration "to tell the court what those grounds might be" by bringing a "specific[] challenge [to] the delegation agreement's validity or enforceability." *Id*. at 1295 n.8. "[A] party may challenge an arbitration agreement's enforceability by asserting that a federal statute outside the FAA precludes arbitration."[18] *Id*. (citations omitted)." "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 227.

---

[18] Grounds for specifically challenging a delegation agreement also may include "'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Attix*, 35 F.4th at 1302 (quoting *Rent-A-Center*, 561 U.S. at 68). Coleman does not raise any of those grounds.

18

Coleman's sole specific challenge to the delegation clause is that it violates USERRA's prohibition on "any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b). In Coleman's view, USERRA provides the right to proceed in federal court, and she did not waive that right under the terms of the primary arbitration agreement. Therefore, she reasons, the delegation clause places an unlawful prerequisite to that USERRA-granted right because it requires her to arbitrate the question of arbitrability before litigating her claims in court. (Doc. No. 13 at 11-12 (citing *Breletic v. CACI, Inc.*, 413 F. Supp. 2d 1329, 1337 (N.D. Ga. 2006)).)

Coleman's argument wholly overlooks that the parties entered an independent agreement to delegate the question of arbitrability to an arbitrator. Even if the primary arbitration agreement is unenforceable, its unenforceability does not necessarily negate the delegation agreement. *See Steines*, 113 F.4th at 1342 ("[I]f § 2 of the FAA applies, the district court must enforce the delegation clause as a separate contract unless the delegation clause itself is specifically invalidated, even if the underlying contract or arbitration agreement is clearly invalid."); *see also Attix*, 35 F.4th at 1303 ("For the purpose of assessing its validity or enforceability, a delegation agreement is 'severable' from the primary arbitration agreement in which it is contained.").

Put another way, Coleman's challenge to the validity of the delegation clause is not "really" about the delegation agreement. Rather, Coleman challenges the enforceability of the primary arbitration agreement to arbitrate the merits of her USERRA claims. *Cf. Attix*,

35 F.4th at 1303–04 (holding that, "before deciding a challenge to the validity or enforceability of a delegation agreement, [a court] should ensure that the challenge asserted *really* is about the delegation agreement"). By arguing the delegation clause constitutes an unlawful "prerequisite" to her alleged right to pursue the merits of her claims in federal court,[19] Coleman premises her USERRA challenge to the delegation clause entirely on the alleged unenforceability of the parties' separate, primary arbitration agreement. Coleman urges this Court to adopt the court's rationale in *Dubose* to find she has not waived that right. Yet, under the delegation clause, the parties have agreed to submit questions about the "validity [and] enforceability" of the primary arbitration agreement to an arbitrator. (Doc. No. 10-2 at 6 ¶ 2.) Hence, "the arbitrability dispute in this case—*i.e.*, whether [USERRA] prohibits enforcement of the parties' arbitration agreement—is for an arbitrator to decide." *Attix*, 35 F.4th at 1289.

In sum, the Court concludes the FAA applies, clear and unmistakable evidence demonstrates the parties formed an agreement to delegate arbitrability to the arbitrator, the arbitrability dispute falls within the scope of the delegation clause, and the delegation

---

[19] Coleman's argument regarding the enforceability of the delegation clause is limited to one paragraph in her brief in response to the motion to compel arbitration. (Doc. No. 13 at 11-12.) Coleman mentions elsewhere in her brief that USERRA provides "[n]o fees or court costs may be charged or taxed against any person claiming rights under this chapter." 38 U.S.C. § 4323(h)(1)). She does not argue the delegation clause is unenforceable because it deprives her of the benefit of proceeding in federal court without payment of fees and costs. (*Cf. Dubose*, at 17 (finding that the CVS agreement's cost and fees provision violates USERRA's prohibition on fees and court costs). *But cf.* Doc. No. 10-2 at ¶ 4.d. (CVS's arbitration agreement providing "if Your claim initiation fee exceeds what a court in the jurisdiction would have charged You for filing a lawsuit based on Your claims, then You will be responsible only for the amount that the court would have charged, and CVS will pay the remaining amount to the AAA.").)

clause is enforceable under § 2 of the FAA. Therefore, the FAA requires enforcement of the delegation clause. *Attix*, 35 F.4th at 1295.

## V.   CONCLUSION

Accordingly, the Court will not rule on the arbitrability of Coleman's USERRA claims. Instead, the Court finds the issue of arbitrability is a question for the arbitrator. A separate order will be entered.

DONE this 31st day of March, 2025.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE